FILED

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

2010 AUG 19  P 4: 40

**HAMLET LOPEZ**

U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

v.

**C.A. No. 09-578 S**

**A.T. WALL ET AL.**

### REPORT AND RECOMMENDATION

Jacob Hagopian, Senior United States Magistrate Judge

Plaintiff, Hamlet Lopez, *pro se*, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, filed a complaint (the "Complaint" or "Cmpt.") pursuant to 42 U.S.C. § 1983 naming 37 ACI administrators and correctional officers ("C.O.s") as defendants ("Defendants") (Docket # 1). The four Defendants who have been served in this action filed Motions for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") (the "Summary Judgment Motions") (Dockets ## 21 & 24). Plaintiff has objected to Defendants' motions ("Plaintiff's Objection") (Docket # 29). This matter has been referred to me for recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons stated below, I recommend that the Summary Judgment Motions be granted and the case be dismissed.

### BACKGROUND

**I.     Plaintiff's Allegations**

In order to provide background information regarding Plaintiff's claims, the following alleged facts are culled from the Complaint, including the exhibits attached thereto.

**A.     Prison Conditions, Harassment, and Assault**

In the Complaint, Plaintiff contends that "the overall prison conditions … violate the minimum health procedures" and lists problems including: (i) physical dilapidation; (ii) deficient plumbing and clean water supplies; (iii) no fire sprinkler system in cells or mandated areas; (iv) unsanitary and old portable toilets; (v) vermin, asbestos, mold, and Legionnaire's Disease in the cells; and (vi) ventilation and heating problems.

Additionally, Plaintiff complains that various Defendants verbally harassed him and also harassed him by actions including (i) interfering with his phone privileges and visitors; (ii) denying him outside recreation; (iii) ransacking his cell repeatedly; (iv) denying him food on occasion; (v) destroying or confiscating his property, including legal papers; (vi) denying him law library access; (vii) denying him a shower for 15 days; (viii) reading his legal papers; and

1

(ix) strip-searching him.   The Complaint also alleges that one C.O. exposed his genitals to Plaintiff on one occasion.   Additionally, the Complaint alleges that Defendant Lieutenant Joshua MaCumber and other C.O.s physically assaulted Plaintiff and then carried Plaintiff to the segregation unit where he was stripped naked and left cold for days.

### B.   Medical Needs

The Complaint further alleges that certain Defendants refused to provide Plaintiff with a cell that accommodated his medical needs, including back and neck injuries and breathing problems, while other C.O. Defendants refused to allow Plaintiff to attend his scheduled medical appointments and denied him medication that had presumably been prescribed for him.

### C.   False Bookings

The Complaint also includes a number of allegations regarding allegedly false bookings. First, the Complaint states that Defendant Lieutenant Avila sat on a disciplinary board regarding an allegedly false booking against Plaintiff (for a charge not specified in the Complaint) even though Avila previously had reviewed and formulated an opinion regarding the booking.   The Complaint also states that Defendant Lieutenant Paquatte compelled block officers to write false disciplinary bookings against Plaintiff, and, with respect to one particular booking against Plaintiff (again for a charge not specified in the Complaint), Paquatte falsified a plea of guilty. Additionally, the Complaint alleges that, after Plaintiff complained to Defendant Captain Clancy that a fellow inmate had stolen his sneakers and assaulted him, Clancy (i) had Plaintiff taken to punitive segregation for six days and (ii) fabricated charges against Plaintiff in connection with the incident.   The Complaint goes on to state that the disciplinary board exonerated Plaintiff on the charges because the other inmate admitted to the robbery/assault.

### D.   Other Allegations

The Complaint alleges that certain Defendants (i) disciplined Plaintiff for praying and Bible study, prohibited him from attending Spanish services and fellowshipping, took religious magazines from him, and threatened him with segregation for practicing his religion; (ii) interfered with Plaintiff's incoming and outgoing mail, including his legal mail; and/or (iii) retaliated against Plaintiff for contacting his family and the media, religious acts, and filing a lawsuit against the Rhode Island Department of Corrections ("RIDOC") in connection with injuries Plaintiff allegedly sustained while riding in a RIDOC vehicle.   The Complaint also alleges that various ACI officials responsible for investigating prisoner complaints refused to investigate or otherwise respond to Plaintiff's numerous complaints regarding RIDOC staff.

## II.    Defendants' Motions for Summary Judgment

Defendants have moved for summary judgment, urging that Plaintiff failed to properly exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  Defendants state that RIDOC has made administrative remedies available to Plaintiff, as set forth in *RIDOC Policy and Procedure, Policy Number* 13.10, pp. 1-15 (the "Grievance Policy" or "Grievance Procedure"), which Defendants submit in support of their Summary Judgment Motion.    Affidavit of Robert McCutcheon, Ex. A (Docket # 22). Defendants further state that Plaintiff has failed to exhaust such remedies, and submit an affidavit from Robert McCutchen ("McCutcheon Affidavit"), RIDOC Grievance Coordinator, in support of their contention.

In the Complaint, Plaintiff states that "Letters of exhaustion were sent to [Defendant RIDOC Director Wall] by the plaintiff, and other letters were sent by his excellency Governor Carcieri, Senator Reed and Whitehouse as well."  Cmpt. at p. 3.   Further, in response to Defendants' instant Summary Judgment Motions, Plaintiff states that he "filed countless measures to exhaust every prong that the PLRA requires.  1) Letters to Lieutenants. 2) Captains. 3) Deputy Warden(s). 4) Warden. 5) Director Wall."  Plaintiff's Objection at p. 1.  He further states, "All grievances to defendant McCutcheaon [sic] were NEVER responded to."  *Id.*  He also urges that "when Wall responds to a letter, and allows or denies a [sic] allegation, he has CLOSED THE CASE" and states that he would have been disciplined for violating the chain of command if he had pursued grievances after hearing from Director Wall.  *Id.*  Additionally, Plaintiff contends that certain claims in the Complaint fall within the category of matters that the Grievance Policy describes as "Non-grievable."  *Id.*

### DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The moving party bears the burden of showing that there is no genuine issue as to any material fact necessary to entitle him to judgment.  *Donovan v. Agnew*, 712 F.2d 1509, 1516 (1st Cir. 1983).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).  A fact is material if it has the potential to affect the outcome of the suit under the applicable law.  *Id.*

Further, where, as here, defendants move for summary judgment based on an affirmative defense, *see Jones v. Bock,* 549 U.S. 199, 212, 127 S.Ct. 910 (2007)(a prisoner's failure to exhaust administrative remedies pursuant to the PLRA is an affirmative defense), defendants bear the burden of proof on the issue, and must provide conclusive evidence establishing the same. *See E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Ancantarillados de Puerto Rico,* 279 F.3d 49, 55 (1st Cir. 2002).

If the movant makes the required showing, the nonmoving party opposing summary judgment must demonstrate the existence of a genuine issue of material fact. *Liberty Lobby, Inc.,* 477 U.S. at 256. To oppose the motion successfully, the nonmoving party "may not rest upon mere allegation", but instead, "must establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 841-42 (1st Cir. 1993)(citations omitted).

## II.  Prisoner Litigation Reform Act Exhaustion Requirement

The Prisoner Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Importantly, the PLRA requires "proper exhaustion" of administrative remedies, which means the plaintiff must utilize all administrative remedies provided by an agency and must comply with the agency's procedural rules prior to filing a federal lawsuit relating to the conditions of his or her confinement. *Woodford v. Ngo,* 548 U.S. 81, 90-91, 126 S.Ct. 2378 (2006). The purpose of the exhaustion requirement is to afford "'corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Id.* at 93 (quoting *Porter v. Nussle,* 534 U.S. 516, 525, 122 S.Ct. 983 (2002)).

### A.  Rhode Island Department of Corrections' Grievance Process

As set forth in the Grievance Policy, RIDOC has established a three-tiered inmate grievance process. Grievance Policy at pp. 1-15. The first tier of the Grievance Policy, or the informal process, requires that the inmate "seek resolution from the lowest level of the chain of command" using a RIDOC Request Form (Pink Slip). *Id.* at p. 6. At the second tier, also known as Level 1 of the 2-level formal grievance procedure, an inmate appeals to the warden of the facility where he resides by: (i) showing that he attempted to satisfy the grievance informally; (ii) obtaining a Request for Resolution of Grievance Form ("Formal Grievance Form"); and (iii)

4

submitting the Formal Grievance Form to the warden. *Id.* at p. 7. At the third tier, also known as the Level 2 of the formal grievance procedure, the inmate fills out a Formal Grievance Form, which is sent to the RIDOC Grievance Coordinator for investigation and final decision by the RIDOC Director. *Id.* at p. 11.

## B.   Plaintiff's Failure to Utilize Grievance Procedure

Here, as noted above, Defendants have submitted an affidavit in which RIDOC Grievance Coordinator, Robert McCutcheon, testifies that he reviewed Plaintiff's files and found no record of the inmate filing a Level 2 grievance. McCutcheon Affidavit at ¶¶ 8 & 9. Accordingly, Defendants conclude, Plaintiff could not have exhausted his administrative remedies. Each of Plaintiff's responses in opposition is reviewed below.

### 1.   Alleged Failure to Respond by McCutcheon

First, Plaintiff states, "All grievances to defendant McCutcheaon [sic] were NEVER responded to," suggesting that Plaintiff did file grievances with McCutcheon. Plaintiff's Objection at p. 1. However, Plaintiff's "mere allegation" is insufficient to overcome the McCutcheon Affidavit stating that Plaintiff never filed any Level 2 grievances with the Grievance Coordinator. Plaintiff does not (i) specifically state that he sent Formal Grievance Forms to Grievance Coordinator McCutcheon or (ii) present copies of the grievances he allegedly filed. Thus, Plaintiff fails to "establish a trial-worthy issue by presenting 'enough competent evidence to enable a finding favorable to the nonmoving party.'" *LeBlanc*, 6 F.3d at 841 (citations omitted).

### 2.   Letters of Complaint

Plaintiff also urges that he exhausted his administrative remedies by sending letters to various ACI personnel, including Lieutenants, Captains, Deputy Warden(s), Warden, and Director Wall. Plaintiff's Objection at p. 1. In support of this argument, Plaintiff alleges that Director Wall's decisions are final and Plaintiff would have been disciplined for violating the chain of command if he had pursued grievances after hearing from Director Wall. *Id.* Nonetheless, Plaintiff's argument is insufficient to defeat summary judgment in Defendants' favor. As noted above, the PLRA requires "proper exhaustion," which requires compliance with the procedures of the available grievance procedure. *See Ngo*, 548 U.S. at 88. Sending letters here is not equivalent to filing Formal Grievance Forms according to the specific procedures set forth in the Grievance Policy. *See Duran v. Patrick*, Nos. 07-11343 & 07-12356, 2010 WL 2682414 at * 5 (D.Mass. June 09, 2010)(prisoners' letters to prison authorities did not satisfy

proper exhaustion under prison grievance policy and thus summary judgment granted in favor of defendants).

Moreover, Plaintiff did not (i) submit copies of the letters or the responses to such letters; (ii) state the content of the letters or otherwise demonstrate that the letters addressed each (or any) of the numerous allegations included in the Complaint; or (iii) indicate that Director Wall addressed each (or any) of the matters contained in the Complaint. Thus, even if the letters could *arguendo* be construed as substitutes for Pink Slips and Formal Grievance Forms, Plaintiff "has not presented any evidence showing that he complained to the [D]efendants in writing about the incidents for which he is attempting to hold the [D]efendants liable." *Id.* (citing *LeBlanc*, 6 F.3d at 841 (requiring specific facts to show the existence of a genuine issue for trial)).

### 3.   "Non-Grievable" Matters

Finally, Plaintiff alleges that some of the allegations in the Complaint fall into the category of "Non-grievable" matters established in the Grievance Policy. Specifically, he suggests that grievances are not allowed for issues regarding medical claims, conditions of confinement, religious matters, and discipline. However, while the Grievance Policy includes "[d]iscipline decisions ... [and] [d]ecisions by qualified medical personnel related to an inmate's health" among the "Non-Grievable" areas of prison life, Grievance Policy at p. 4, Plaintiff does not assert claims about such matters in the Complaint. As described above, the medical claims about which Plaintiff complains involve the alleged refusal by certain C.O. Defendants (i) to allow him to attend his scheduled medical appointments or have medication and (ii) to provide him housing based on his medical needs. While these allegations involve medical issues, they do not involve decisions by qualified medical personnel.

Additionally, in the Complaint, Plaintiff alleges that (i) Defendant Lieutenant Avila sat on the disciplinary board regarding a fabricated charge against Plaintiff even though Avila had previously reviewed the charge and formulated an opinion regarding the same; (ii) Defendant Lieutenant Paquatte compelled block officers to write false bookings against Plaintiff and falsified a plea of guilty by Plaintiff with respect to a particular charge; and (iii) Defendant Captain Clancy had Plaintiff taken to punitive segregation for six days after Plaintiff complained about another inmate assaulting and stealing from him and then fabricated charges against Plaintiff in connection with the assault/theft incident (which the disciplinary board subsequently rejected, exonerating Plaintiff of the charges). While these claims all relate to the prison disciplinary process, they do not involve the discipline decision (*i.e.*, the finding of guilt or the

consequences imposed). The first two involve complaints about the actions of certain officials involved in the disciplinary decision, not about the decision itself, while the latter involves a complaint about Plaintiff being taken to punitive segregation prior to a disciplinary board exonerating him of the charges.

Further, even if Plaintiff's claims regarding the disciplinary process were "Non-grievable," they should be dismissed pursuant to the screening requirements in 28 U.S.C. §§ 1915 & 1915A for failing to state claims on which relief may be granted. The due process procedural protections apply only if a life, liberty or property interest is abrogated. *See Wilkinson v.Austin*, 545 U.S. 209, 221, 125 S.Ct. 2384 (2005). However, a prisoner does not have a free-standing liberty interest in not having a false disciplinary charge leveled against him. *See Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986). Additionally, Plaintiff also fails to state a liberty interest regarding the discipline imposed as a result of the allegedly fabricated charges. Plaintiff alleges that he was subjected to six days in segregation as a result of Defendant Clancy's fabricated charge, and he does not state the consequences of the other bookings. Therefore, he does not allege consequences that "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life," as required by the Supreme Court to find a state-created liberty interest. *Sandin v. Connor,* 515 U.S. 472, 484, 115 S.Ct. 2293 (1995)(punitive segregation for a term of 30 days did not trigger the protections of the Due Process Clause because it did not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life"); *see also Williams v. Wall*, No. 06-012, 2006 WL 2854296, at *3 (D.R.I. Oct. 04, 2006)(21 days of segregation at ACI did not implicate liberty interest).

Finally, in contrast to Plaintiff's statements in Plaintiff's Objection, neither "conditions of confinement" nor "religious matters" are listed as "Non-grievable" aspects of prison life in the Grievance Policy. *See* Grievance Policy at p. 6.

## CONCLUSION

As set forth above, Defendants have demonstrated that there is no genuine issue as to Plaintiff's failure to exhaust the administrative remedies available to him at the ACI and that they are thus entitled to judgment as a matter of law. Therefore, I recommend that Defendants' Summary Judgment Motions be GRANTED and the case be DISMISSED, without prejudice, for Plaintiff's failure to exhaust administrative remedies as required by the PLRA.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Fed R. Civ. P. 72(b); LR Cv 72(d). Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986) (per curiam).

_____
Jacob Hagopian
Senior United States Magistrate Judge
Date: August 10, 2010